# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-13-00333-CR
NO. 03-13-00334-CR

**Richard Gonzales, Appellant**

**v.**

**The State of Texas, Appellee**

FROM THE DISTRICT COURT OF HAYS COUNTY, 207TH JUDICIAL DISTRICT
NOS. CR-12-0141 & CR-13-0053, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Richard Gonzales guilty of multiple child sexual abuse offenses: continuous sexual abuse of a young child for sexually abusing his seven-year-old niece, A.R., *see* Tex. Penal Code § 21.02(b), and four counts of indecency with a child by sexual contact for sexually abusing his eight-year-old niece, K.R., *see id.* § 21.11(a)(1).[1] In accordance with the jury's verdicts, the trial court assessed appellant's punishment at confinement in the Texas Department of Criminal Justice for 58 years for the continuous sexual abuse offense, *see id.* § 21.02(h), and 12 years for each of the indecency offenses, *see id.* § 12.33, ordering all of the sentences to be served concurrently. On appeal, appellant complains about a violation of the witness sequestration rule and the admission of expert testimony. Because the parties are familiar with the

---

[1] The jury also acquitted appellant of continuous sexual abuse of a young child relating to further allegations of sexual abuse perpetrated against K.R.

facts of these cases, their procedural history, and the evidence adduced at trial, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4. Finding no reversible error, we affirm the trial court's judgments of conviction.

## DISCUSSION

In two points of error on appeal, appellant asserts that the trial court erred in (1) allowing the girls' former counselor to remain in the courtroom during their testimony in violation of the witness sequestration rule and (2) admitting testimony from the State's child abuse expert that commented on the girls' credibility.

### Exemption from the Rule

At the beginning of trial, the witness sequestration rule was invoked. *See* Tex. R. Evid. 614 (requiring, upon request of party, exclusion of witnesses from courtroom so they cannot hear testimony of other witnesses). Before K.R. and A.R. testified during the guilt-innocence phase of trial, the State requested that Stephanie Watts, the therapist from the children's advocacy center who had provided counseling to the girls, be permitted to remain in the courtroom to hear the girls' testimony because she needed to observe their testimony in order to offer her expert opinions. Over appellant's objection, the trial court allowed the counselor to be in the courtroom when the girls testified, instructing that she sit on the back row of the courtroom. In his first point of error, appellant asserts that the trial court abused its discretion by allowing Watts to remain in the

2

courtroom because the State made an inadequate showing that Watts's presence was essential to the State's case.

Texas Rule of Evidence 614, commonly referred to as "the Rule," codifies the witness sequestration rule. When invoked by either party or the trial court, the Rule mandates, with some exceptions, the exclusion of witnesses from the courtroom during trial so they cannot hear the testimony of other witnesses. Tex. R. Evid. 614. One of the exceptions to the Rule is for a person essential to the presentation of the party's case. *See* Tex. R. Evid. 614(3) (witness exclusion rule "does not authorize exclusion of a person whose presence is shown by a party to be essential to the presentation of the party's cause"). The party seeking to exempt a witness from the Rule has the burden of showing that the claimed exception applies. *Russell v. State*, 155 S.W.3d 176, 180 (Tex. Crim. App. 2005); *Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd). Enforcement of the rule and its exceptions lies within the sound discretion of the trial court. *Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Thus, a trial court's decision to permit a witness to remain in the courtroom after the witness sequestration rule is invoked is reviewed for an abuse of discretion. *Moore v. State*, 882 S.W.2d 844, 848 (Tex. Crim. App. 1994); *see Allen*, 436 S.W.3d at 822.

Here, the State maintained that Watts should be exempted from the Rule as an expert witness because her presence was essential to the presentation of the State's case, asserting that the counselor needed to observe the testimony of K.R. and A.R. in order to later explain to the jury any "counterintuitive behaviors" the girls might display during their testimony. The State maintained that it was very narrowly tailoring the therapist's presence in the courtroom (to only the testimony

3

of the two girls she counseled) for that specific purpose. In his objection, appellant complained about the "discrete danger" that the mere presence of the counselor in the courtroom could cue the children to remember "something that went on in therapy as opposed to what went on during the alleged offense."

The purpose of the witness sequestration rule is to prevent the testimony of one witness from influencing the testimony of another, consciously or not. *Russell*, 155 S.W.3d at 179; *see Routier v. State*, 112 S.W.3d 554, 590 (Tex. Crim. App. 2003) ("The Rule is designed to prevent witnesses from altering their testimony, consciously or not, based on other witnesses' testimony."); *Allen*, 436 S.W.3d at 822 ("[T]he witness sequestration rule[ ] prevents witnesses from tailoring their testimony to fit that of other witnesses and enhances the jury's ability to detect falsehood by exposing inconsistencies in testimony."); *Harris v. State*, 122 S.W.3d 871, 882 (Tex. App.—Fort Worth 2003, pet. ref'd) ("The purpose of the Rule is to prevent corroboration, contradiction, and the influencing of witnesses."). Appellant's complaint—at trial and on appeal—concerns how Watts's presence purportedly influenced the girls when they testified, not how hearing their testimony influenced Watts's testimony. The witness sequestration rule does not address the impact of the presence of the potential witness on the testifying witness; rather, the Rule addresses how hearing the testimony of other witnesses influences, perhaps improperly, the later testimony of the witness who is present in the courtroom observing the testimony.

Notwithstanding appellant's concern, which is not addressed by the Rule, we do not find that the trial court abused its discretion in allowing the girls' former counselor to be present in the courtroom to hear their testimony for the purpose of later providing her expert opinion to explain

4

certain behaviors the girls might exhibit when they testified. "'The trial court is vested with discretion and may permit expert witnesses to be exempt from the rule in order that they may hear other witnesses testify and then base their opinion on such testimony.'" *Martinez v. State*, 867 S.W.2d 30, 40 (Tex. Crim. App. 1993) (quoting *Lewis v. State*, 486 S.W.2d 104, 106 (Tex. Crim. App. 1972)); *see Robles v. State*, No. 10-12-00398-CR, 2013 WL 5952141, at *4 (Tex. App.—Waco Nov. 7, 2013, pet. ref'd) (mem. op., not designated for publication); *Caron*, 162 S.W.3d at 618; *Ham v. State*, No. 05-95-00737-CR, 1998 WL 272213, at *4 (Tex. App.—Dallas May 29, 1998, no pet.) (not designated for publication). We believe the purpose articulated by the State—providing expert testimony based upon observations of the children's testimony to explain exhibited behaviors not readily understood by those not familiar with the dynamics of child sexual abuse—is consistent with the exception provided for in the Rule.[2] *See, e.g.*, *Hullaby v. State*, 911 S.W.2d 921, 929 (Tex. App.—Fort Worth 1995, pet. ref'd) ("[I]t seems clear that the State was seeking the presence of the witness to hear and interpret the meaning of "gang" slang and symbolism; it being apparent that some such slang and symbolic gestures/signs do not have a meaning that is readily discernable by the uninitiated. This fact situation is one of the scenarios that part (3) of the rule contemplates.").

Moreover, even assuming the trial court erred in permitting Watts to stay in the courtroom, violation of an evidentiary rule is non-constitutional error and will be disregarded unless

---

[2] In his brief, appellant argues that the fact that the State did not in fact call Watts as a witness during the guilt-innocence phase to provide such explanatory testimony shows that Watts was not essential to the State's case. However, it seems just as likely the reason that Watts was not called to testify during the guilt-innocence phase is that the girls did not exhibit counterintuitive behaviors during their testimony that required Watts's expert explanation.

5

it affected the appellant's substantial rights. *Russell*, 155 S.W.3d at 181; *see* Tex. R. App. P. 44.2(b). Thus, we need not reverse if, after examining the record as a whole, we have fair assurance that the error did not influence the jury's deliberations to appellant's detriment or had but a slight effect. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011); *Sandoval v. State*, 409 S.W.3d 259, 287 (Tex. App.—Austin 2013, no pet.).

A key factor in determining harm when a witness was erroneously allowed to remain in the courtroom in violation of the witness sequestration rule is whether the witness's testimony was influenced by the testimony the witness heard. *Russell*, 155 S.W.3d at 181–82. In his brief, appellant maintains that he was harmed because "the sole basis for [appellant's] conviction was the testimony of the alleged victims, and [the counselor's] presence in the courtroom during their testimony influenced that testimony to [his] detriment."[3] Once again, however, the purpose of placing a witness under the Rule is to prevent that witness from being influenced in her testimony by the testimony of another witness. *Id.* at 181. Accordingly, the question in assessing the harm of allowing Watts to remain in the courtroom is whether she was influenced in her testimony by the testimony of K.R. and A.R. *See id.*

To address the issue of harm in this circumstance, we consider (1) whether Watts actually heard the testimony of K.R. and A.R. and (2) whether Watts's testimony "either contradicted the testimony of a witness from the opposing side or corroborated testimony of a witness she heard."

---

[3] We observe that the record does not support this claim. The testimony of the girls at trial was consistent with the statements they made during their forensic interviews at the children's advocacy center, recordings of which were admitted into evidence at trial and published to the jury. These interviews took place before any counseling by Watts.

*See Allen*, 436 S.W.3d at 824; *see also Webb v. State*, 766 S.W.2d 236, 240 (Tex. Crim. App. 1989) ("[I]njury or prejudice to the party in a criminal trial [resulting from a violation of the witness sequestration rule] is dependent upon a showing of two criteria:  (a) did the witness actually confer with or hear the testimony of the other witness; and (b) did the witness's testimony contradict the testimony of a witness from the opposing side or corroborate the testimony of another witness he had conferred with or had otherwise actually heard.").  The appellant has the burden to demonstrate that the record supports a finding under both prongs.  *Allen*, 436 S.W.3d at 824.

Here, the record demonstrates that Watts did in fact hear the children's testimony as she sat on the back row of the courtroom.  However, as appellant observes, the State did not call Watts as a witness during the guilt-innocence phase of trial.  Further, while Watts testified during the punishment phase, her testimony addressed (1) her qualifications, (2) general therapies utilized with children (play therapy, expressive art therapy, talk therapy), (3) the girls' personalities and their experiences and progress in therapy, (4) court school (preparation for testifying at trial), and (5) the healing process generally for child sexual abuse victims and how the lack of family support is detrimental to the healing process.  Throughout her testimony, Watts also discussed the various impacts of sexual abuse on children, including guilt and shame issues, trust issues, self-esteem issues, issues with depression, the risk of self-destructive behavior, the impact on the development of healthy sexuality during puberty, the influence on the choice of relationship partners, and the effect on a victim's experience of parenthood.  Watts ultimately expressed her opinion that "[t]here is no point that [K.R. and A.R.] will be free [of what [appellant] has done to them].  [The sexual abuse] is unfortunately a part of them and a part of their lives."  This opinion was based on her

7

knowledge of the general concepts relating to the impact of sexual abuse on children and her therapy experience with the girls, not the girls' testimony during trial. Thus, based on the record here, we cannot conclude that appellant established that Watts's testimony during the punishment phase was influenced by K.R.'s and A.R.'s testimony. The record does not demonstrate that appellant was harmed by Watts's presence in the courtroom during the girls' testimony, if it was error.

We overrule appellant's first point of error.

## Expert Testimony

In his second point of error, appellant maintains that the trial court erred in overruling his objection to particular testimony from Melissa Rodriguez, the forensic interviewer from the children's advocacy center who conducted the interviews of K.R. and A.R., that purportedly elicited her expert opinion concerning the girls' truthfulness.

During the State's redirect examination of Rodriguez, the prosecutor asked, "And sitting here today, after reviewing all the videos, do you have any concern that these children were coached or manipulated into telling a false story?" Appellant's counsel objected, arguing that the question called for Rodriguez to comment on the girls' credibility. The trial court agreed that the witness could not comment on the girls' credibility, but further expressed the court's belief that Rodriguez was "able to say whether she had a concern [about coaching or manipulation], based on what the children said." Appellant's counsel then complained that the answer would be "an implicit endorsement." The trial court disagreed, and Rodriguez answered the question in the negative: "No, I didn't have any concerns of coaching."

"Direct opinion testimony about the truthfulness of another witness, without prior impeachment, is inadmissible." *Lopez v. State*, 343 S.W.3d 137, 140–41 (Tex. Crim. App. 2011). Thus, the State may not elicit expert testimony that a particular child is telling the truth, or that child complainants as a class are worthy of belief. *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993); *Sandoval*, 409 S.W.3d at 291. Nor may an expert offer an opinion on the truthfulness of a child complainant's allegations. *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Sandoval*, 409 S.W.3d at 291. However, expert testimony that a child did not exhibit indications of coaching or manipulation does not constitute a direct opinion on the child's truthfulness. *See Schutz*, 957 S.W.2d at 73; *Cantu v. State*, 366 S.W.3d 771, 777–78 (Tex. App.—Amarillo 2012, no pet.); *Chavez v. State*, 324 S.W.3d 785, 788–89 (Tex. App.—Eastland 2010, no pet.); *Rushing v. State*, No. 09-08-00396-CR, 2010 WL 2171628, at *5 (Tex. App.—Beaumont May 26, 2010) (mem. op., not designated for publication), *aff'd*, 353 S.W.3d 863 (Tex. Crim. App. 2011); *Darling v. State*, 262 S.W.3d 920, 924 (Tex. App.—Texarkana 2008, pet. ref'd).

We see no abuse of discretion in the trial court's overruling of appellant's objection to the complained-of question. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011) ("A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement."). The prosecutor's question explicitly inquired about Rodriguez's opinion concerning whether the girls "were coached or manipulated," a permissible inquiry, rather than seeking the interviewer's opinion of K.R.'s and A.R.'s truthfulness. *See Hernandez v. State*, No. 03-12-00805-CR, 2015 WL 412834, at *4–5 (Tex. App.—Austin Jan. 30, 2015, no pet.) (mem. op., not designated for publication)

9

(propounded questions did not call for forensic interviewer's opinion of whether child complainant was truthful in her allegations, but only whether child—and not someone else—was source of allegations). The correctness of the trial court's ruling was borne out by the answer to the question, in which Rodriguez indicted that she had no concerns "of coaching." *See Cantu*, 366 S.W.3d at 778 (testimony did not convey interviewer's opinion as to whether child was telling truth; testimony indicated only that interviewer believed allegations came from child rather than from someone telling child what to allege); *Charley v. State*, No. 05-08-01691-CR, 2011 WL 386858, at *4–5 (Tex. App.—Dallas Feb. 8, 2011, no pet.) (mem. op., not designated for publication) (expert was not asked and did not testify that child was telling truth; testimony was that child was able to provide sensory details which was important because she would not have been able to do so had she been coached); *Reynolds v. State*, 227 S.W.3d 355, 366 (Tex. App.—Texarkana 2007, no pet.) (expert's testimony was appropriate because she explained how she interviews children and that she saw no indications that child had been coached).

The objected-to question did not call for testimony that directly commented on the girls' credibility or truthfulness, and no such testimony was given. Accordingly, the trial court did not abuse its discretion in overruling appellant's objection. We overrule appellant's second point of error.

## CONCLUSION

Having concluded that the trial court did not abuse its discretion in exempting the girls' former counselor from the witness sequestration rule or in allowing the forensic interviewer

10

to testify about her opinion as to whether the girls had been coached, we affirm the trial court's judgments of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:   June 11, 2015

Do Not Publish